IN THE MATTER OF THE ESTATE OF PHILIP C. WALSH, JR., DECEASED.

FEDERAL TRUST COMPANY, A CORPORATION OF NEW JERSEY, AS SURVIVING TRUSTEE, ETC., ACCOUNTANT-RESPONDENT, v. MARY E. WALSH, ET AL., EXCEPT-ANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued October 11, 1954—Decided October 28, 1954.

See also 20 N. J. Super. 542, 90 A. 2d 119.

Before Judges CLAPP, JAYNE and FRANCIS.

*Mr. William Rowe* argued the cause for accountant-respondent (*Messrs. Steelman, Lafferty & Rowe*, attorneys).

*Mr. Joseph F. Walsh* argued the cause for exceptants-appellants (*Messrs. Bracken & Walsh*, attorneys).

The opinion of the court was delivered by

CLAPP, S. J. A. D.    Exceptants appeal from a judgment allowing the ninth intermediate account as to the trust under the will of Philip C. Walsh.    There are three principal questions in the case:

1. Whether the Federal Trust Company, the surviving trustee, is chargeable for interest, which it paid to itself out of the trust income, on a bond and mortgage acquired by its banking department;

2. Whether the Trust Company is accountable for profits, if any, made by it and an affiliated company on securities purchased by the trustees from the affiliate;    and

3. Whether the trial court erred in denying exceptants a hearing on their claim that trustee failed to maintain property, called the Homestead, as directed by the will.

First, then, is the Trust Company surchargeable for the mortgage interest? At testator's death in 1922, he and Mary E. Walsh, his wife, were obligated on a bond and mortgage on the Homestead, property owned by her. The trial court found:

"In September 1923 the mortgage on the property came due and the then mortgagee was unwilling to extend it * * * efforts were made by members of the Walsh family, without success, to refinance the mortgage. The Walshes asked the Federal Trust Company for help and the Bank finally in October, 1923 took the mortgage over paying full value for it."

And again:

"* * * from the evidence it clearly appears that * * * [as] a convenience to the Walsh family this bank took over the mortgage and paid the face value for it in order to save the Walsh family from having the mortgage foreclosed."

The Trust Company in its fiduciary capacity was doubly obligated to pay the interest on this mortgage: the testator not only had signed the bond, but (as was held in another phase of this case) by his will had in effect directed his trustees to pay this interest.

Circumstances may be such as to justify either an advance by a fiduciary of his own money on behalf of the estate or any other action on his part by which he becomes its creditor; and while the court will scrutinize the circumstances sharply, still if it finds a sufficient justification for the action taken, it will allow the fiduciary interest on his claim. *Liddel v. McVickar*, 11 *N. J. L.* 44, 47 (*Sup. Ct.* 1829); *Camden Trust Co. v. Haldeman*, 133 *N. J. Eq.* 427, 434 (*Ch.* 1943), affirmed *Camden Trust Co. v. Cramer*, 136 *N. J. Eq.* 261 (*E. & A.* 1945); *Gardner's Estate*, 323 *Pa.* 229, 185 *A.* 804, 807 (*Sup. Ct.* 1936); *Finch v. Pescott*, *L. R.* 17 *Eq.* 554 (*Ch.* 1874); *Small v. Wing*, 5 *Bro.* 66,

74, 2 *Eng. Rep.* 537, 542 (*H. L.* 1730); 2 *Scott on Trusts* 900 (1939); 4 *Bogert, Trusts and Trustees* (1948), § 971, *p.* 321. Further, see *Bray v. Neill's Executrix*, 21 *N. J. Eq.* 343, 351 (*Prerog.* 1870); *Smith v. Drake*, 23 *N. J. Eq.* 302, 307 (*Ch.* 1873); *Braman v. Central Hanover Bank & Trust Co.*, 138 *N. J. Eq.* 165, 189 (*Ch.* 1946).

After a study of the rather sketchy evidence brought before us on the point, we see no good reason for disturbing the above-stated findings of the trial court. In the circumstances as so found, there was justification for the fiduciary's actions sufficient to entitle it to interest. It cannot be said, nor is it said, that the trustees with propriety could have paid off the principal of the mortgage from the *corpus* of this trust; the *corpus* is chargeable under the law, not for the face amount of the bond, but only for the deficiency, if any, arising on a foreclosure sale. And the takers of the *corpus*—persons other than the mortgagor, Mrs. Walsh— would have had good cause to object if that which was theirs had been appropriated to her use and benefit by paying off an obligation on which their fund was liable but contingently and in actuality perhaps in 1923 (the security being sufficient), not at all.

But though justified in what it does, a trustee should receive no more than a reasonable rate of interest on its claim against the estate. *Earll v. Picken*, 72 *App. D. C.* 91, 113 *F.* 2d 150, 161 (*C. A. D. C.* 1940, Rutledge, J.); 2 *Scott, supra*, § 170.20; contrast *Wyckoff v. Wyckoff*, 44 *N. J. Eq.* 56, 61 (*Ch.* 1888) (where the trust had a claim against the trustee for interest which he wanted reduced). In fact the Trust Company—holding the mortgage (we shall assume, there being nothing to indicate the contrary) as a past due mortgage—drew out of the trust, from 1923 on, 6% per annum thereon, the rate fixed in the mortgage. This was improper, we find, so far as the interest paid exceeded the rate currently payable on a mortgage similarly circumstanced. Not the least among the circumstances is the fact that not only was the estate in its hands obligated to pay the principal and interest on the bond and under the terms of the will

to pay from trust income, for the life of the trust, the taxes, insurance and repairs on the mortgaged property—but there seems to have been sufficient funds, indeed at times more than ample funds, to meet these items, including at least some repairs.

██ Who, it must next be asked, may take exception to this matter of interest? Obviously only those entitled to the trust income have been damnified by the reduction of that income. 4 *Bogert, supra,* § 819; 2 *Scott, supra,* § 214 (*Rothenberg v. Franklin-Washington Trust Company,* 133 *N. J. Eq.* 261 (*E. & A.* 1943), is not to the contrary). Indeed in the stating of the contentions in the pretrial order, the only person making any claim as to the mortgage interest is Mrs. Walsh, who has recently died. We (and the court below on the remand) are limited then to the rights of her estate.

But, as the Trust Company says, she consented to the assignment of the mortgage to it, and did so after advising with her attorney, who then wrote a letter as to the matter. And, it might be added, the attorney did not at that time (see the proctor's affidavit of services in connection with the executors' account) represent the estate.

██ She consented; but what is the reach of that consent? She agreed to a 6% rate on this open mortgage in 1923; but did she then agree to a like rate years later when rates on the mortgage market may perhaps have gone down? She is chargeable, through her attorney, with knowledge of her legal rights in 1923; but is she to be charged therewith as to conditions not likely to have been anticipated? The self-dealing here was a recurring matter—recurring every six months when interest was paid. It seems plain to us that her initial consent did not absolve the trustee as to these future conditions.

██ The consent, then, is not of much avail to the trustee. However, the fact is, as the trustee next claims, Mrs. Walsh in 1926, to an extent, assigned her right to income under paragraph sixth (b) of the will, and the assignee, though a party below, makes no claim to the mortgage interest.

It is contended by exceptants' counsel that she did not thereby assign her right to what she may recover from the trustee by way of surcharge for this interest. But we think she did. Any amount due her from the Trust Company because of its self-dealing as to the matter of interest constitutes income to her "derived  *  *  *  from the estate" of her husband, and it therefore is subject to the terms of the assignment. It may well be, indeed it seems quite likely, that because of this assignment Mrs. Walsh's claim will fall. However, the record before us is not focused on these issues, and the case will therefore have to be remanded to the Chancery Division to determine, not only the period or periods, if any, in which the reasonable return on this mortgage was less than 6%, but also whether during any such period and in the light of the assignment any amount may be due Mrs. Walsh's personal representative (who should be joined in the action) under the circumstances and principles stated. To that end, and as applied for below, the prior accounts will be opened.

We think that in view of the prospect that relief will be denied on the remand, it is unnecessary for us to discuss the matter of laches (*Donnelly v. Ritzendollar*, 14 *N. J.* 96, 107, 1953) and *res judicata* (*Donnelly v. Ritzendollar, Id.,* at *page* 109). Besides the trustee's brief no more than mentions that there are such defenses.

The second principal question before us goes to the $30,000, or more, of securities purchased by the Trust Company from National Commercial Title and Mortgage Guaranty Company. Concededly the directorates of these companies at the times in question were in a large measure interlocking. Exceptants asked below to have the trustee render a full account of all transactions between the companies with respect to the estate and trust, as well as (the question allegedly was specifically raised in the trial memorandum below. Further see *R. R.* 1:5–3c) the commissions and profits made by both companies in connection with those transactions; and they asked also a reopening of the prior accounts to this extent. This relief should be granted.

The court below held otherwise for the reason that the securities purchased from National had been paid off at face. Indeed, so far as the affiliate's profits are concerned, there is some authority for this view in a case where the transactions are affirmed. *Albright v. Jefferson County Nat. Bank*, 292 *N. Y.* 31, 53 *N. E. 2d* 753, 757, 151 *A. L. R.* 897 (*Ct. App.* 1944), 30 *Virginia L. Rev.* 499 (1944); but see *Rothenberg v. Franklin-Washington Trust Company*, 133 *N. J. Eq.* 261 (*E. & A.* 1943), *supra*. We are in doubt as to the soundness of the view, but need not decide the point; there has been no argument on the matter and, besides, exceptions may perhaps be filed to the account disaffirming the transactions. We, of course, do not pass on the question whether such exceptions may be sustained.

█ Insofar as these securities consist of mortgages or participations therein, the Trust Company must include in the account profits of itself and its affiliate by reason of their dealings *inter sese* with respect to the same, embracing, as well, brokerage charges made by the affiliate on the placement of the mortgage and on its sale to the trustees, and making some reasonable allocation of those charges with respect to the participations held in the trust. *Rothenberg v. Franklin-Washington Trust Company*, 133 *N. J. Eq.* 261 (*E. & A.* 1943), *supra*.

█ The third principal question in the case has to do with the maintenance of the Homestead. For some unaccountable reason, at the pretrial conference the court, as stated in the pretrial order, refused to allow the pleadings to be amended so as to set forth an alleged cause of action as to the matter of maintenance and thereby to secure to exceptants rights as to maintenance then recently expounded in their favor on a construction of the will in a separate phase of the case. Exceptants moved thereafter to amend the pretrial order but the motion was adjourned over objection, then left off the motion list, then renoticed, and later (two weeks before the trial) ordered adjourned without date. At the trial the court refused to allow the pretrial order to be amended. There was here a manifest abuse of the discretion confided in

the court by *R. R.* 4:15–1, which requires it to grant amendments to the pleadings freely when justice so requires. On the remand of the case, there may be filed as to the Ninth Account exceptions concerning the matter of maintenance, specifying with particularity both the nature of each item for which allowance is sought by exceptants, and the damages allegedly sustained thereby, as well as the reasons for the exceptions. *R. R.* 4:106–6.

However, we see no warrant for opening up the prior accounts with respect to the matter of maintaining the Homestead. In those accounts there are many items as to such maintenance, apparently absorbing for some years nearly all the income of the trust. There is no ground for opening up such accounts with respect to this matter; it cannot be said that there is an issue here, such as self-dealing, which has not been fairly tendered by the fiduciary-accountant to the *cestui que* trust in his earlier accounts. *Liberty Title & Trust Co. v. Plews*, 6 *N. J.* 28, 39 (1950); *cf. Munday v. Vail*, 34 *N. J. L.* 418 (*Sup. Ct.* 1871); *Restatement of Judgments* § 8*c; N. J. S.* 3*A*:9–8*b*(3).

Attack is made upon the allowance to trustee's attorneys, in connection with the several litigations involved, of a fee of $5,000 on this estate, which has a value now of about $92.000. The attorneys claim the fee to be inadequate, and exceptants call it exorbitant. No allowance should have been made as to services rendered, which have been occasioned by transactions between National and the Trust Company and—if there is a surcharge as to the interest on the mortgage—by the matter of mortgage interest. *Cf. Dickerson v. Camden Trust Company*, 1 *N. J.* 459, 468 (1949). The trial court on the remand should reduce the fee of $5,000, but only insofar as it is attributable to those services.

Reversed and remanded.